**STATE OF CALIFORNIA, DEPART-
MENT OF HEALTH SERVICES,
Petitioner,**

v.

**UNITED STATES DEPARTMENT OF
HEALTH & HUMAN SERVICES,
Respondent.**

**No. 86–7453.**

United States Court of Appeals,
Ninth Circuit.

Argued March 12, 1987.

Submitted Nov. 20, 1987.

Order and Opinion July 27, 1988.

Elisabeth C. Brandt, Chief Deputy Atty. Gen., Sacramento, Cal., for petitioner.

Joseph Stein, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, Washington, D.C., for respondent.

Before POOLE and BOOCHEVER, Circuit Judges, and DAVIES,* District Judge.

## ORDER

The petition for rehearing is granted. The opinion filed December 7, 1987 is withdrawn. The attached opinion is ordered filed.

## OPINION

BOOCHEVER, Circuit Judge:

The State of California, Department of Health Services (State) challenges the administrative decision of the Secretary of Health and Human Services (Secretary) denying the State permission to implement its proposed Medicaid State Plan Amendment 82–03 (amendment) as part of the California Medicaid program. The Health Care Financing Administration (HCFA), an agency of the Health and Human Services Department responsible for the administration of the Medicaid program, denied approval of the proposed amendment. The State filed a formal appeal of the HCFA decision. A HCFA Review Officer proposed affirming the HCFA decision and the Administrator of the HCFA adopted the review officer's decision, thus rendering a final decision of the Secretary. On this petition for rehearing the State contends that the Secretary's decision must be reversed because it is arbitrary and capricious, constitutes an abuse of discretion, and is contrary to law. We affirm in part and reverse in part the Secretary's decision.

* Honorable John G. Davies, United States District Judge for the Central District of California, sitting by designation.

## BACKGROUND

This case arises under the Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396p (1982 & Supp.III 1985). The purpose of the Medicaid program is to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed. 2d 784 (1980). Although participation in the program is entirely optional, once a state chooses to participate, the state then must comply with the Title XIX requirements. *Id.* Participation begins with the state submitting a State Medicaid Plan to the Secretary of Health and Human Services. The Secretary then must approve any state plan that meets the requirements of 42 U.S.C. § 1396a(a). 42 U.S.C. § 1396a(b) (1982 & Supp. III 1985). Upon the Secretary's approval, the state becomes entitled to receive federal financial assistance for state program expenditures made in accordance with the approved plan. 42 U.S. C. § 1396b(a) (1982).

The Medicaid program consists of two components. First, a state Medicaid program must provide assistance to the so-called "categorically needy" recipients of welfare benefits. 42 U.S.C. § 1396a(a)(10)(A). This means that all those eligible for benefits in the "categorical assistance" programs—Aid to Families with Dependent Children (AFDC), 42 U.S.C. §§ 601–606 (1982 & Supp. III 1985), and Supplemental Security Income for the Aged, Blind and Disabled (SSI), 42 U.S.C. §§ 1381–1382j (1982 & Supp. III 1985), must be provided with full Medicaid benefits under the state plan.

Congress considers these categorically needy persons "especially deserving of public assistance" for medical expenses, *Schweiker v. Gray Panthers*, 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981), because they "earn[ ] less than what has been determined to be required for the basic necessities of life." *Atkins v. Riv-*

*era,* 477 U.S. 154, 157, 106 S.Ct. 2456, 2459, 91 L.Ed.2d 131 (1986). AFDC and SSI cover only basic necessities, not medical expenses. If a categorically needy person incurs medical expenses, payment of these expenses would infringe on the amounts provided by AFDC or SSI for basic necessities. Thus, mandatory medical coverage is needed for these people. *Id.*

The state may also provide, at its option, Medicaid coverage to other aged, blind, and disabled people and to families with dependent children, whose income and/or resources are too high to qualify them for welfare benefits. This group is designated as "medically needy" and is deemed "less needy" than the categorically needy. They "receive assistance only if their income and resources [are] insufficient 'to meet the costs of necessary medical or remedial care and services.'" *Schweiker v. Hogan,* 457 U.S. 569, 573, 102 S.Ct. 2597, 2601, 73 L.Ed. 2d 227 (1982) (quoting 79 Stat. 345, *as amended by* 42 U.S.C. § 1396a(a)(10)(C)). The medically needy may qualify for financial assistance if they incur medical expenses in an amount that effectively reduces their income below that of the categorically needy. *Atkins,* 477 U.S. at 158, 106 S.Ct. at 2459. Only when the medically needy "spenddown" the amount by which their income exceeds the medically needy income level determined necessary for the basic necessities of life are they in the same position as the categorically needy AFDC or SSI recipients. Similarly, any further expenditure by the medically needy for medical expenses would have to come from funds reserved for basic necessities. *Id.* Thus, the state, with the assistance of federal financial participation, may aid the medically needy whose income falls below the medically needy income level.

The state Medicaid plan establishes the "medically needy income level" (MNIL) standard that determines the maximum amount of income a medically needy applicant is allowed to keep for nonmedical needs and still be eligible for Medicaid. For a medically needy family of two, in either of California's AFDC–linked or SSI–linked programs, the MNIL amount was $500 during the period in question.

California's Medicaid program (Medi–Cal) includes provisions for both the categorically needy and medically needy groups. The present dispute involves two issues in the medically needy category of the Medi–Cal program: (1) a special income deduction (SID) for medically needy applicants, and (2) a "time factor" limitation on the amount of incurred medical expenses that is deducted in determining the eligibility of a medically needy applicant. The Secretary determined that the inclusion of these two provisions violated Title XIX of the Social Security Act and rejected the proposed amendment. Shortly thereafter, California repealed the Special Income Deduction.

## STANDARD OF REVIEW

In reviewing the Secretary's denial of the amendment, we must decide all relevant questions of law and interpret the statutory provisions at issue. 5 U.S.C. § 706 (1982). We can set aside the Secretary's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 706(2)(A); "in excess of statutory . . . authority," § 706(2)(C); or "without observance of procedure required by law," § 706(2)(D). The Secretary's interpretation of the Medicaid Act is entitled to deference; nevertheless, "the courts are the final authorities on issues of statutory construction. They must reject administrative constructions of the statute . . . that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

## DISCUSSION

### 1) Special Income Deduction

██ The State urges that the "Special Income Deduction" (SID) complies with the regulations implementing 42 U.S.C. § 1396a(a)(10)(C) specifying that to determine countable income the State must subtract amounts deductible that would be deducted in determining eligibility under SSI.

42 C.F.R. § 435.831(a) (1986).[1] These deductions are known as income disregards. The State argues that, pursuant to 20 C.F.R. § 416.1124(c) (1987), it had the authority to promulgate the SID as a valid income disregard. That federal regulation provides:

> (c) *Other unearned income we do not count.* We do not count as unearned income—
>
> . . . . .
>
> (2) Assistance based on need which is wholly funded by a State or one of its political subdivisions ... [which] includes State supplementation of Federal SSI benefits [as defined]....

The State contends that this section of the Supplemental Security Income for the Aged, Blind and Disabled (SSI) regulations permits the medically needy recipient under SSI to retain for general living purposes the same amount of income as that retained by a categorically needy (welfare) recipient. The State accomplishes this through the use of the SID.

The SID problem first appeared with the State's attempt to equalize the amount of income a SSI medically needy applicant receives with that of the categorically needy. For example, an AFDC family of two receives a $480 combination of grant and non-disregard income. A medically needy family, which aside from income would qualify under the federal AFDC program, is referred to as AFDC-linked. An AFDC-linked "medically needy" family of two may retain a maximum income of $500 while still qualifying for Medi–Cal. Thus, for the AFDC-linked medically needy family of two, a maintenance level of $500 necessarily allows the beneficiaries an amount to live on which is slightly greater than the $480 amount that they would have to live on if their income were totally or partially a grant under the AFDC "categorically needy" program.

For the SSI-linked medically needy family, however, the situation is different. Under the State and federal program an SSI family of two receives a combination of grant and nonexempt income of $746. The SSI-linked medically needy family of two, however, may keep only $500 in nonexempt income after the spenddown. Thus, in this example, the SSI-linked medically needy family is entitled to keep less income than the categorically needy SSI family.

In order to remedy this disparity, California enacted legislation creating the Special Income Deduction (SID). The applicant for medical assistance may deduct the amount of income by which the federal SSI grants and nonexempt income allowed for the categorically needy exceeds the medically needy income level. In the example of an SSI family of two referred to above, the SID would represent an amount equal to the difference between the categorically needy level of $746, and the $500 allowed to the medically needy under the SSI-linked program. In effect, the medically needy would be able to keep $246 in otherwise nonexempt income, in addition to the $500

---

1. 42 U.S.C. § 1396a(a)(10)(C)(i) provides in pertinent part:

> (i) the plan must include a description of ... (III) the single standard [MNIL] to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility, which shall be the same methodology which would be employed under the supplemental security income program in the case of groups consisting of aged, blind, or disabled individuals in a State in which such program is in effect, and which shall be the same methodology which would be employed under the appropriate State plan (described in subparagraph (A)(i)) to which such group is most closely categorically related in the case of other groups....

42 C.F.R. § 435.831(a) provides:

> (a) *Determining countable income.* The agency must deduct the following amounts from income to determine the individual's countable income.
> (1) For individuals under age 21 and caretaker relatives, the agency must deduct amounts that would be deducted in determining eligibility under the State's AFDC plan.
> (2) For aged, blind, or disabled individuals in States covering all SSI recipients, the agency must deduct amounts that would be deducted in determining eligibility under SSI. However, the agency must also deduct the highest amounts from income that would be deducted in determining eligibility for optional State supplements if these supplements are paid to all individuals who are receiving SSI or would be eligible for SSI except for their income.

presently allowed, resulting in equal maintenance levels for the medically needy and the categorically needy. The State contends that the SID is the most rational response to the federal Medicaid requirements.

We note that while the use of the SID creates equality of income retained between the categorically needy and medically needy applicants, the SID fails to meet the requirement that the State, in determining the medically needy eligibility, must use the same income disregards in the same manner and to the same extent as under the SSI program. 42 U.S.C. § 1396a(a)(10)(C)(i); 42 U.S.C. § 1396a(a)(17)(B); 42 C.F.R. § 435.831(a); see also Atkins, 477 U.S. at 162–63, 106 S.Ct. at 2461. The same methodology proviso "simply instructs States to treat components of income—e.g., interest or court-ordered support payments—similarly for both medically and categorically needy persons." Atkins, 477 U.S. at 163, 106 S.Ct. at 2462; see 42 U.S.C. § 1396a(a)(10)(C)(i).

The federal Medicaid program, with respect to the SSI-linked and the AFDC-linked medically needy individuals, requires the State to include all income and resources not disregarded in determining eligibility for SSI or AFDC benefits. 42 U.S.C. § 1396a(a)(17)(B). Under California's Medicaid program, the medically needy applicant, unlike the categorically needy, does not receive assistance funded by the State or one of its political subdivisions. Thus the State, by using the SID, is deducting from the income of a medically needy applicant an amount that the applicant never received from the State. As we have set forth previously, 20 C.F.R. § 416.1124(c) permits disregarding income wholly funded by a state. We find that the SID does not constitute a disregard of assistance funded by the State as required by the federal regulation. Although we recognize the disparate treatment between the categorically needy and the medically needy recipient under the SSI program, we are mindful of the Supreme Court's statement that "[w]hatever the scope of the requirement of comparability between the categorically and the medically needy, it is clear that the Act does not require the income of medically needy persons—after the deduction of incurred medical expenses—to be at least comparable to that of the categorically needy." Hogan, 457 U.S. at 587–88 n. 28, 102 S.Ct. at 2608–09 n. 28.

We must reverse the Secretary's disapproval of the SID amendment, however, for quite another reason. The State further argues that the moratorium enacted in the Deficit Reduction Act of 1984 (DEFRA) requires approval by the Secretary of a reasonable State plan provision if its only alleged defect is that it has a less restrictive income methodology for medically needy recipients than for grant recipients. DEFRA established a moratorium period during which the Secretary

shall not take any compliance, disallowance, penalty, or other regulatory action against a State ... by reason of such State's [Medicaid] plan ... being determined to be in violation of [the Social Security Act] section 1902(a)(10)(C)(i)(III).

Deficit Reduction Act of 1984 (DEFRA), Pub.L. No. 98–369, § 2373(c)(1), 98 Stat. 494, 1112 (1984). DEFRA clearly prohibits the Secretary from taking any regulatory action against a state. In Cubanski v. Heckler, 781 F.2d 1421, 1429–30 (9th Cir. 1986), vacated as moot sub nom. Bowen v. Kizer, —— U.S. ——, 108 S.Ct. 1200, 99 L.Ed.2d 402 (1988), this court held that the Secretary's mere disapproval of a proposed Medicaid plan amendment also violated the DEFRA moratorium. State of Washington v. Bowen, 815 F.2d 549, 555–56 (9th Cir.1987) followed Cubanski to hold that DEFRA prohibited the Secretary from disapproving a state Medicaid plan because its methodology was less restrictive than the Secretary's. Although our earlier judgment in Cubanski has been vacated, State of Washington remains the law of this circuit.

Ordinarily, we must follow a previous decision of this court, absent a subsequent change in the substantive law. See Royal Dev. Co. v. NLRB, 703 F.2d 363, 368 (9th Cir.1983); Smith v. United States Postal Serv., 766 F.2d 205, 207 (6th Cir.1985). The Secretary argues that an amendment

to DEFRA subsequent to our decisions in *Cubanski* and *State of Washington* clarifies that the statute does not bar disapproval of state plan amendments. In August 1987, Congress enacted the Medicare and Medicaid Patient and Program Protection Act, Pub.L. No. 100–93, 101 Stat. 680 (1987). The Act added a new subsection to DEFRA, which specifies that a plan amendment is part of a state plan—and therefore subject to the DEFRA moratorium— "whether or not the amendment was approved, *disapproved*, acted upon, or not acted upon by the Secretary." Pub.L. No. 98–369, § 2373(c)(5), 98 Stat. 494, 1112 (1987), *as amended by* Pub.L. No. 100–93, § 9, 101 Stat. 680, 695 (1987) (emphasis added). The Secretary interprets that language to indicate that disapproved amendments are subject to DEFRA's moratorium on "compliance, disallowance, penalty, or other regulatory action against a State," § 2373(c)(1), and submits that disapproval is therefore within the Secretary's power, while taking action on any such disapproval is not.

We cannot agree with the Secretary that the 1987 amendment to DEFRA constitutes a change that allows us to disregard *State of Washington*. Although the language of section 2373(c)(5) can be interpreted as consistent with the Secretary's position, our review of the amendment's statutory history convinces us that Congress did not intend the amendment to support that position. Indeed, there is some indication that Congress considered HCFA's refusal to approve less restrictive methodologies as "directly contrary" to the moratorium. H.R. Rep. No. 85, 100th Cong., 1st Sess., pt. I, at 23 (1987), U.S.Code Cong. & Admin.News 1987, 682.

Although we have some doubt that DEFRA should be read to bar the Secretary from merely determining that a state plan is in violation of the Social Security Act, *State of Washington* constrains us to hold that the Secretary may not disapprove the SID amendment to the California plan. We therefore reverse the Secretary's disapproval of the SID provision.

### 2) *Incurred Medical Expense Time Limitation*

■ The Secretary also disapproved the State's three-month medical expense limitation. As previously noted, if after applying the income disregards specified at 42 C.F. R. § 435.831(a), an individual's countable income is still above the applicable MNIL, a state (in determining income eligibility of medically needy applicants) is required by 42 U.S.C. § 1396a(a)(17)(D) to deduct "except to the extent prescribed by the Secretary, the costs ... incurred for medical care or for any other type of remedial care recognized under State law." Title 42 U.S. C. § 1396a(a)(17)(D) is implemented through 42 C.F.R. § 435.831(c). The crux of this issue involves the interpretation of section 435.831(c)(2), which allows "[t]he agency [to] set reasonable limits on the amounts of incurred medical expenses to be deducted from income under paragraphs (c)(1)(i) and (ii) of this section."

The State interprets 42 U.S.C. § 1396a(a)(17)(D) and 42 C.F.R. § 435.831(c) as containing the implied requirement that medical expenses which can be counted towards the acquisition of Medicaid benefits must be incurred during a period when the individual was eligible. The State contends that because one can establish eligibility only three months retroactively, the medical expenses incurred during that period alone can be counted towards later spenddown requirements.

The Secretary takes the position that the only limits that the State can place on the deduction of incurred medical expenses are limits on the types of medical care and services. Absent this exception, any medical expenses for which the applicant is currently liable shall be considered in the MNIL spenddown including unpaid expenses incurred at any time prior to the date of application. The Secretary contends that this position has been spelled out by the Secretary in a series of policy issuances.

The State argues that Congress did not intend to give the Secretary discretion to allow a Medicaid beneficiary to have the

Medicaid program subsidize medical bills incurred during a period for which eligibility has not been established. On the other hand, the HCFA and its predecessor have interpreted 42 U.S.C. § 1396a(a)(17)(D) and the corresponding regulation 42 C.F.R. 435.831(c)(2) to mean that unpaid medical expenses for which the applicant is still liable, incurred at any time prior to the date of application, must be included in determining Medicaid eligibility. Medical Assistance Manual § 4-30-30(B)(1)(d); PIQ-77-63(MSA). Even though the State sets forth a reasonable argument for imposing a three-month limitation, we note that the "interpretation of an agency charged with the administration of a statute is entitled to substantial deference." *Schweiker v. Hogan*, 457 U.S. at 588, 102 S.Ct. at 2608; *Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982). Accordingly, we hold that the HCFA's interpretation of the statute and corresponding regulation is reasonable and thus affirm the Decision of the Administrator in this respect.

### 3) Conformity and Compliance Issue

Both parties have acknowledged that even though the SID and the "time factor" limitation on the deduction of incurred medical expenses were not included in the State's approved plan under Title XIX, the State in practice included these two concepts in the implementation of its Medicaid plan. The State argues that the Secretary should have pursued this question of "noncompliance" premised upon "the failure of the State in practice to comply with a Federal requirement," through the procedure set forth in 45 C.F.R. § 201.6 (1986).

The Secretary states that alternative remedies were available: conformity/compliance or State plan amendment disapproval. The State simply argues that it was tricked into submitting a proposed amendment. The State cites no authority for this estoppel argument or for its position that the compliance route was the only remedy available to the Secretary.

### CONCLUSION

We hold that the Secretary's disapproval of the SID provision is barred by the DEFRA moratorium. While the time limitation is indeed a rational interpretation of the regulations, the State fails to show that the HCFA's interpretation of the applicable regulation is arbitrary and capricious, an abuse of discretion, or contrary to law. Accordingly, we reverse the decision of the Administrator denying the proposed SID, and affirm the denial of the time limitation.

AFFIRMED IN PART AND REVERSED IN PART.