No. 90-418

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FIRST SECURITY BANK & TRUST OF
MILES CITY, a Montana corporation,

    Plaintiff and Respondent,

  v.

VZ RANCH, a Montana corporation,
and LEONARD ROBERTS, an individual,

    Defendants and Appellants.



APPEAL FROM:  District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Kenneth R. Wilson, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

    Allen Beck, Esq., Billings, Montana

    For Respondent:

    Joel Guthals, Esq., Billings, Montana

Submitted on Briefs:  February 14, 1991

Decided:  March 19, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

VZ Ranch, a Montana corporation, and Leonard Roberts appeal a judgment of the Sixteenth Judicial District, Custer County, which granted summary judgment on behalf of First Security Bank and Trust of Miles City (Bank) and against appellants' counterclaim. We affirm.

Appellants raise the following issue:

Did the District Court err when it granted summary judgment against appellants' counterclaim?

Appellants became customers of the Bank in approximately 1975. On February 21, 1983, Roberts, in his individual capacity, executed a personal guarantee, guaranteeing any and all indebtedness of VZ Ranch for past, current, or future debts owed to the Bank, together with any additional expenses and attorney fees.

On January 15, 1985, Leonard Roberts, as President of VZ Ranch, executed two promissory notes, a renewal note for $1,400,000 and a real estate note for $296,000, both notes payable to the Bank on November 1, 1985. Because the total loan exceeded the Bank's $1,200,000 lending limit, the loan required a participating bank, Richland National Bank of Sydney.

Additionally on January 15, 1985, Roberts, as President of VZ Ranch, executed a security agreement granting the Bank a security interest in VZ Ranch's crops, livestock, feed, seed, fertilizer, silage, straw, hay, farm machinery and equipment. The Bank's

2

security interest was properly perfected by the filing of UCC financing statements in the appropriate county and state offices.

From January to November 1985, the Bank extended $1,573,871.03 in operating funds to VZ Ranch. In June, 1985, the Bank notified appellants that this loan was classified substandard by the Federal Deposit Insurance Corporation (FDIC) because of, 1) insufficient cash flow, and 2) the value of the loan exceeded the value of the cattle serving as primary collateral. Shortly thereafter, Richland National Bank of Sidney withdrew its participation from this loan due to the loan's quality. Accordingly, the loan had to be paid down to remain bankable.

In an effort to remove the substandard classification and make the loan bankable and renewable, the Bank recommended to Roberts that VZ Ranch 1) obtain a Small Business Administration (SBA) loan and apply it to the loan, 2) sell certain property and apply its proceeds to the loan, and 3) submit an acceptable operating budget. Upon meeting these three conditions, the Bank agreed to extend future operating loans to VZ Ranch for 1986. VZ Ranch, however, failed to meet one of the conditions, the sale of certain property, and accordingly, the Bank did not extend future operating loans for 1986. In a deposition, Roberts acknowledged that these were the three conditions expressed by the Bank in order for VZ Ranch to receive additional operating loans, and that one of the conditions, the sale of the certain property, was indeed not met.

3

Additionally, the Bank advised Roberts to consider selling all of VZ Ranch's cattle in the fall of 1985, and apply the proceeds to the loan. During November and December of 1985, upon the Bank's further direction, VZ Ranch sold its cattle and applied the bulk of the proceeds to the loan, with the remainder of the proceeds going toward VZ Ranch's incurred expenses.

In January, 1986, VZ Ranch filed a chapter 11 bankruptcy petition with the United States Bankruptcy Court, which stayed creditors, including the Bank, from pursuing collection of VZ Ranch's pre-petition debts. During this bankruptcy proceeding, the Bankruptcy Court, in an August 29, 1986, order, allowed VZ Ranch, the debtor-in-possession, to use cash collateral of the bankruptcy estate under U.S.C. § 364, to harvest its 1986 crop. This order further stated that all cash collateral was to remain in the possession of VZ Ranch pending further order. Therefore, when the 1986 crop was harvested, VZ Ranch retained control of the crop proceeds, which totaled $103,796.70. Although the Bank appealed this order to the Bankruptcy Appellate Panel of the Ninth Circuit on September 4, 1986, and the panel remanded the order back to the Bankruptcy Court for reconsideration on November 19, 1986, the bankruptcy proceeding was dismissed on January 29, 1987, before a hearing to reconsider the order was conducted. Accordingly, the appellants retained control of the proceeds of the 1986 crops through and following the dismissal of the bankruptcy proceeding.

4

On March 16, 1987, the Bank filed a complaint against appellants for claim and delivery, foreclosure of security interests, and injunctive relief. On July 7, 1987, the District Court ordered appellants to turn over the $103,796.70 in proceeds from the 1986 crop to the court. On July 29, 1987, the Bank moved for contempt of appellants failing to comply with the order.

On August 13, 1987, the District Court found Roberts in contempt of the order. Accordingly, the District Court ordered Roberts jailed until September 15, 1987, the day he turned over the proceeds to the court. Additionally, on August 13, 1987, appellants filed a counterclaim, which alleged that the Bank, "commenced a willful and malicious course of action seeking to force the [appellants] out of business and/or into bankruptcy."

The counterclaim asserted that "[t]his course of action is in breach of the duty of the [Bank] to the [appellants] of good faith and fair dealing." The counterclaim alleged that the "action commenced when the [appellants] refused to enter into a business transaction with Mr. Nefsy, an owner of the [Bank]." In particular, the counterclaim alleged that the Bank forced appellants, "to liquidate livestock at a time and in a manner calculated to minimize the return thereon and to further jeopardize the [appellants'] financial condition." The counterclaim alleged that the Bank "represented to the [appellants] that they should continue certain farming and ranching operations in the fall of 1985 and

5

that continued financing for those operations would be provided; upon those assurances, the [appellants] conducted said farming operations incurring debt but when loan advances were requested they were denied by [the Bank]."

Furthermore, the counterclaim alleged that the Bank assured appellants that if they obtained an SBA loan, "and paid the proceeds thereof over to the [Bank] that the [Bank] would continue financing [appellants'] operations; the [appellants] obtained such [SBA] loan and paid the proceeds over to the [Bank] but [Bank] failed to provide the promised financing." Finally, the counterclaim alleged that appellants relied on the Bank's promises and assurances to their detriment, and that the Bank "ha[d] been motivated by ill-will and for the purpose of injuring and damaging [appellants]."

On October 31, 1989, the Bank moved for summary judgment when attempted negotiations failed. In an amended memorandum and opinion dated July 12, 1990, the District Court granted the Bank summary judgment on its complaint and against appellants' counterclaim. The District Court held that the counterclaim lacked sufficient facts to support a claim of breach of contract. Additionally, the District Court held "that there was no breach of the covenant of good faith and fair dealing nor was there a fiduciary relationship between the parties that directed an

6

extension of further credit [by the Bank]." From this judgment, appellants appeal.

Did the District Court err when it granted summary judgment against appellants' counterclaim?

Here, the appellants do not contest that the Bank was entitled to summary judgment on its complaint; the sole issue is whether the District Court erred when it granted summary judgment against the appellants' counterclaim. Our discussion will therefore be limited to the counterclaim.

The counterclaim alleges two causes of action: 1) breach of the implied covenant of good faith and fair dealing in contract, where contact damages are allowed, and 2) breach of the implied covenant of good faith and fair dealing in tort, where actual damages and punitive damages are allowed. See Story v. City of Bozeman (1990), 242 Mont. 436, 450-452, 791 P.2d 767, 775-76. The record, however, does not support any of the appellants' allegations raised in their counterclaim. Section 28-1-211, MCA, provides:

> The conduct required by the implied covenant
> of good faith and fair dealing is honesty in
> fact and the observance of reasonable commer-
> cial standards of fair dealing in the trade.

Here, the record does not indicate any dishonesty or un-reasonable commercial behavior on the part of the Bank toward the

appellants.  The Bank notified appellants of the substandard classification of the appellants' loan.  The Bank then met with Roberts to discuss ways to remove the substandard classification and make the loan bankable and renewable.  The Bank agreed to renew the loan if the appellants could meet three conditions:  1) obtain an SBA loan, 2) sell certain property, and 3) submit an acceptable operating budget.  Although the appellants' counterclaim alleges that obtaining an SBA loan was the only condition stipulated by the Bank, Roberts acknowledged in a deposition that there were indeed three conditions to renew the loan.  Roberts further acknowledged in the deposition that although the appellants met two of the conditions, obtaining an SBA loan and submitting a revised operating budget, they failed to meet one of the conditions, the sale of certain property.

In the deposition, Roberts alleges that his troubles with the Bank began when he refused to enter a business transaction involving cattle with Mr. Nefsy, an owner of the Bank.  The record, however, is void of any evidence that either supports Roberts's allegation or points to any wrongdoing on Nefsy's part.  The appellants in their counterclaim further argue that the Bank forced them to liquidate the cattle "at a time and in a manner calculated to minimize the return thereon and to further jeopardize the [appellants'] financial condition."  Here, however, the Bank was faced with a substandard loan collateralized by cattle, which were

scattered in various locations without adequate feed for their survival. The Bank could not loan more money to appellants for cattle feed until the loan was brought into bankable condition. Thus, the Bank directed appellants to sell the cattle, a reasonable, if not the only, solution in light of the facts. Furthermore, the appellants presented no evidence regarding insufficient cattle prices or calculated actions on the Bank's part to worsen their financial condition through the sale of the cattle at that particular time. We therefore hold that there was no breach of the implied covenant of good faith and fair dealing in contract in this instance.

Regarding appellants' second cause of action, a "special relationship" must exist between the parties for there to be a breach of the implied covenant of good faith and fair dealing in tort. Story v. City of Bozeman, 242 Mont. at 451, 791 P.2d at 776. The elements of a special relationship are:

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

<u>Story</u>, 242 Mont. at 451, 791 P.2d at 776 (citation omitted).

Clearly, the appellants had a profit motivation when Roberts, as President of VZ Ranch, executed the promissory notes to the Bank. Hence, no "special relationship" existed between the appellants and the Bank, and consequently, there was no breach of the implied covenant of good faith and fair dealing in tort. We therefore hold that the District Court properly granted the Bank summary judgment against appellants' counterclaim as there were insufficient facts to support the counterclaim's two causes of action.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

10