FERNANDEZ, Circuit Judge:
Tom Winchell is a Montana farmer who entered into contracts with the Farmers Home Administration (FmHA), the Soil Conservation Service (SCS) and the Agricultural Stabilization and Conservation Service (ASCS), all of which are operated under the auspices of the United States Department of Agriculture. After various problems developed, he brought an action against all of these entities (sometimes referred to as appellees) under the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 2671-80. He asserted that the appel-lees had breached the covenant of good faith and fair dealing. The district court dismissed for lack of jurisdiction because, as it found, Winchell only had a contract claim over which the court had no jurisdiction. Winchell appealed and argues that he spelled out a tortious breach of the covenant of good faith. We disagree and affirm.
BACKGROUND FACTS
Winchell, in common with many others, encountered financial difficulties when hard times and bad weather afflicted the *1443 farmers of Montana. He attempted to rescue himself by turning to a number of governmental agencies for help. Between June of 1980 and January of 1981 he borrowed about $560,000 from FmHA. In the latter year, however, that agency withdrew credit from him, so no further aid was forthcoming from that quarter.
He also applied to participate in the Great Plains Conservation Program which was administered by SCS, and entered into a contract in which he agreed to undertake a large water-spreading project in return for a cost share. For various reasons, the payment of the expected funds was delayed for over two years, and his financial condition deteriorated while he waited.
Finally, on March 24, 1983, he entered into a contract with ASCS under which he was to receive payment in exchange for allowing some of his fields to lie fallow. That contract, however, required that he fulfill certain conditions, including the control of weeds on the fallow land.
By the time he entered into the last contract, Winched’s finances had declined to the point that he was forced to seek the protection of the Bankruptcy Court. On March 18, 1983, he filed a petition under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101 et seq. Still, he hoped that he could use the funds he was to receive from SCS for the purpose of carrying out the weed control measures demanded by ASCS. Unfortunately, those funds were not forthcoming before ASCS terminated his contract with it because the weeds were not under control. The SCS funds finally came in November of 1983, too late to effect his rescue. Having lost property, income and face, he sued. However, he chose the wrong forum.
JURISDICTION
The parties agree, as they must, that the district court and we have jurisdiction over this case only if Winched has spelled out a claim under the FTCA. See 28 U.S.C. § 1346. In order to do that he must show that the wrongs allegedly committed by the appellees “would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred.” Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1990). The district court determined that those requirements had not been met, so it dismissed the action for lack of subject matter jurisdiction. Fed. R.Civ.P. 12(b)(1). We review that determination de novo. Love, 915 F.2d at 1245.
As the background facts demonstrate, Winched’s claims ad arise out of what amount to breaches of contract. The only way he can hope to sped out a tort claim is by asserting that there has been a tortious breach of the covenant of good faith. As we will explain, under the law of Montana he cannot do so.
The course of Montana’s romance with the covenant of good faith tort has not been smooth. As the Montana Supreme Court has pointed out, for decades the breach of the covenant of good faith was a matter of contract law only. Story v. City of Bozeman, 242 Mont. 436, 791 P.2d 767, 772-73 (1990). Then courts began to decide that breach of the covenant could sound in tort when insurance contracts were involved “because the insurance policies gave the insurer absolute discretion in settlement precluding suits for breach of contract.” Story, 791 P.2d at 773. It then grew to more and more areas, to employment contracts, to banking contracts, to commercial contracts, and, indeed, to ad contract settings. Id. at 773-74. Ultimately, however, the Montana Supreme Court called for a halt and a retrenchment. It reaffirmed the principle that “every contract, regardless of type, contains an implied covenant of good faith and fair dealing.” Id. at 775. It also declared that the covenant would be breached when a party “uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract....” Id. But, it added, “[i]n the great majority of ordinary contracts, a breach of the covenant is only a breach of the contract and only contract damages are due.” Id. The court did allow that a tort might be available “in contracts involving *1444 special relationships” but it went on to spell out the elements necessary to show that kind of relationship:
(1) The contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party “whole”; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.
Id. at 776 (citation omitted).
In Story itself the court reversed a judgment in favor of a claimant under a public construction contract. It visited the area again in First Security Bank & Trust v. VZ Ranch, 247 Mont. 453, 807 P.2d 1341 (1991). There a ranch obtained operating loans from a bank. It gave the bank a security interest in the rancher’s “crops, livestock, feed, seed, fertilizer, silage, straw, hay, farm machinery and equipment.” VZ Ranch, 807 P.2d at 1342. It also gave a mortgage on the ranch property, and its president gave his personal guarantee. Id. The all too common financial difficulties ensued, the bank sued to foreclose, and VZ Ranch counterclaimed for tortious breach of the covenant of good faith. The trial court granted summary judgment against VZ Ranch. The Montana Supreme Court agreed that there could be no such claim because “the appellants had a profit motivation_” Id. at 1345. “Hence, no ‘special relationship’ existed between the appellants and the Bank, and consequently, there was no breach of the implied covenant of good faith and fair dealing in tort.” Id.[1]
It is, therefore, apparent that Winchell can spell out no tortious breach of the covenant. He, too, has clearly pled and argued that his contractual involvement with the appellees was in the classic mode of contracts entered into for profit. He was attempting to continue the operation of his farm by borrowing money and by obtaining money for various other actions and forbearances that he was willing to undertake in the management of that farm. His ability to meet other elements of the test applied in Montana is highly problematic. He has not spelled out anything to show that ordinary contractual damages would not suffice, or that any special vulnerability exists. But his case absolutely founders on the non-profit element just as did VZ Ranch’s case. “Hence ... there was no breach of the implied covenant of good faith and fair dealing in tort,” id., and we have no jurisdiction under the FTCA.
We cannot leave this area, however, without commenting on the fact that our decision here is contrary to our decision in Love, 915 F.2d at 1242. We are well aware of our obligation to follow the law as it is declared by those who have ruled before us. See Department of Health Serv. v. Department of Health & Human Serv., 853 F.2d 634, 638 (9th Cir.1988). That rule, however, does not reach so far as to preclude us from following a subsequent change in the law. Id. The Montana Supreme Court has effected just such a change and we should and must follow where it leads.
We recognize that a person with a sharp eye will see that Story was decided on May 3, 1990, which, technically, was before Love’s final decision in October of that year. Nevertheless, Love’s October 5, 1990 date appears in the report of that opinion only because Love was amended. Love was, in fact, initially decided during the heyday of the expansive reading of the covenant of good faith tort in Montana. Love v. United States, 871 F.2d 1488 (9th Cir.1989). It reflected the then existing condition of that law, and there is no rea *1445 son to treat it as an attempt to describe Montana law in October of 1990. Thus, we show no disrespect for our precedent when we reach a conclusion based on the current state of Montana law.
CONCLUSION
The law is sometimes afflicted with cadu-city. This is one of those times. What may once have been a viable claim of tort liability vanished when the Montana Supreme Court deracinated the landscape of the covenant of good faith tort. For this case there is no such tort and no claim under the FTCA. For us, therefore, there is no subject matter jurisdiction.
AFFIRMED.

. We note, by the way, that the court applied its new explication of the law to transactions that had occurred as early as 1985. Thus, it is clear that Story is fully retroactive. That, of course, is the normal rule for judicial decisions. See United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1052 (9th Cir.1990).