No. 88-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

MARK STORY, d/b/a MARK
STORY CONSTRUCTION,

      Plaintiff and Respondent,

  v.

CITY OF BOZEMAN, and
NEIL MANN,

      Defendants and Appellants.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Bruce E. Becker, Bozeman, Montana
Donald R. Herndon argued, Herndon, Harper and Munro,
Bozeman, Montana

      For Respondent:

            Gregory O. Morgan argued, Bozeman, Montana

**FILED**

MAY - 3 1990

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted:   October 17, 1989

Decided:   May 3, 1990

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The City of Bozeman appeals a jury verdict against it in this suit for breach of a construction contract. The jury awarded plaintiff Story $360,000 in tort damages for breach of the covenant of good faith and fair dealing and $13,236 in contract damages. Story cross-appeals. We reverse and remand for retrial.

The appellant raises two interrelated, dispositive issues. The first issue is whether the District Court erred in refusing to grant defendants' motion for a new trial because the special verdict form was inadequate. The second is whether breach of the covenant of good faith and fair dealing gives rise to tort damages in a breach of contract action.

In November 1985 Story successfully bid to construct two water mains for the City of Bozeman (City). The evidence at the one-week trial showed that there was an error in the City's bid schedule form where it gave the engineer's estimate of the amount of pipe bedding material needed for one of the two water mains. The bid schedule asked for a price on 120 "C.F." (cubic feet) of pipe bedding material. (The contract provided that if more material were needed, the successful bidder would be paid extra.) The evidence at trial indicated that the bid schedule should have read "C.Y.," for cubic yards, and that the other contractors who bid on the project assumed cubic yards. Story testified that he bid under

a good faith assumption that only 120 cubic feet of pipe bedding material were estimated as needed on the main, as indicated on the bid schedule. This affected the amount of his bid on that item by a factor of 27, and was undoubtedly one reason he had the low bid on the contract. The City's position was that Story knew all along that the "C.F." was a typographical error and that he bid a rate which would be appropriate for cubic yards but that he was holding out to be paid at a cubic foot rate as a bargaining chip. Story and the City had correspondence and discussions about this matter, but they never resolved it.

Story's construction company began working on the water mains in March of 1986. Story made several requests to the City for time extensions on the job, due to bad weather. The City did not immediately approve or disapprove these requests. It maintained at trial that the weather was normal for that time of year in Bozeman and that most of the requests were not justified. Story contended at trial that, contrary to the advice of the private engineering firm on this project, defendant city engineer Neil Mann was holding the requests for extensions of time as leverage to force Story to accept the City's position on the pipe bedding material. The City eventually approved some of the extensions of time but disapproved most.

The City presented evidence that Story's company did shoddy work on a pipeline which had to be dug up and redone and that at

3

one time during this project, Story moved his crew and equipment to Manhattan, Montana, to work on another project. Story testified that the City had not provided him with appropriate bench marks where the pipe was mislaid and that it was too wet to work on the project in Bozeman at the time he did the work in Manhattan. The City also presented evidence that Story's workers alienated landowners adjacent to the building site by trespassing on and damaging their property. Story testified that the City's easement was not wide enough for this job. In May, Mann wrote to Story's surety on his performance bond, expressing concern that the water mains were not being completed on time. Story's bonding was cut off. In June, Story terminated the contract.

In December of 1986, Story filed his complaint in District Court and in January 1987 filed an amended complaint. The complaint alleged that defendants breached their contract with Story, that they acted in bad faith, and that the letter written by Neil Mann to Story's bonding company was defamatory. The City's answer denied all wrongdoing and affirmatively alleged a typographical error in the contract. The City counterclaimed against Story for reformation and breach of contract.

Using a special verdict form proposed by Story and modified by the court, the jury found that both the City and Mann breached the covenant of good faith and fair dealing. It found no defamation in the letter from Mann to Story's surety. It found that

there was a mutual mistake in the contract, and that the contract should be reformed to correct that mistake. It also found that Story acquiesced in the mistake. The court entered judgment against the City for $373,236 plus costs.

Several post-trial motions were filed by each party. The court denied all such motions, and this appeal followed.

## SPECIAL JURY VERDICT FORM

Did the District Court err in refusing to grant defendants' motion for a new trial because the special verdict form was inadequate?

The jury verdict form did not comply with this Court's decisions on the implied covenant of good faith and fair dealing. In actions in which allegations of breach of a covenant of good faith and fair dealing are based upon a contractual relationship between the parties, this Court has recently required a finding of breach of contract as a condition precedent to consideration of breach of the covenant of good faith and fair dealing. E.g. Montana Bank of Circle v. Ralph Meyers & Son, Inc. (Mont. 1989), 769 P.2d 1208, 1214, 46 St.Rep. 324, 331; Nordlund v. School Dist. No. 14 (1987), 227 Mont. 402, 406, 738 P.2d 1299, 1302.

However, in this case, the main issue, other than defamation, was whether the contract was breached and by whom. This issue would have to be decided before any award of damages. In the

5

pretrial order, both Story and the City listed whether the contract had been breached as an issue to be litigated at trial.

The record reveals that the discussion and redrafting of the special verdict form took place after a long day of trial, lasting from 7:30 a.m. until after 10:00 p.m. The City's proposed special verdict form, while not a model of clarity, did include at interrogatory numbers 6 and 8 the questions, "Did the City of Bozeman breach its contract with Mark Story?" and, "Did Mark Story breach his contract with the City of Bozeman?" The court specifically rejected the City's special verdict form. The special verdict form used, which was modified by the court from the form offered by Story, does not include any question at all as to whether the contract was breached. It does not ask whether the breach arose from a violation of an explicit contract term or whether the breach arose from a violation of an implied covenant of good faith and fair dealing. The City objected that the verdict form was not logically organized and was confusing to the jury. The City did not, however, object on the specific grounds that the special verdict omitted the issue of breach of contract.

For the benefit of the reader, we reprint the special verdict with the jury's answers:

### SPECIAL VERDICT

We the jury, duly impaneled, answer the questions submitted to us in this Special Verdict as follows:

6

QUESTION NO. 1: Did the City of Bozeman breach the obligation of good faith and fair dealing arising out of the Contract with Mark Story?

ANSWER:     Yes ___X___          No _____

QUESTION NO. 2: Did Neil Mann breach the obligation of good faith and fair dealing arising out of the Contract with Mark Story?

ANSWER:     Yes ___X___          No _____

QUESTION NO. 3: Is the May 13th, 1986 letter from Mann to Balboa (Exhibit No. 130-A) false and defamatory?

ANSWER:     Yes _____          No ___X___

If your answer is "yes" then move on to the next question. If your answer is "no" then skip to Question No. 6.

QUESTION NO. 4: Is the May 13, 1986 letter from Mann to Balboa (Exhibit No. 130-A) privileged?

ANSWER:     Yes _____          No _____

QUESTION NO. 5: If your answer to any of Questions 1, 2, or 3 is "yes" then write in below the damages, if any, Mark Story incurred as a result of these actions. If your answer to 3 or 4 is "no", you may not consider damages for defamation.

$ 360,000.00

QUESTION NO. 6: Was there a mutual mistake on Schedule II, Item No. 1, of the Bid in the Contract?

ANSWER:     Yes ___X___          No _____

If your answer is "no" then skip to Question No. 11.

QUESTION NO. 7: Did the City of Bozeman acquiesce in the mistake?

ANSWER:     Yes _____          No ___X___

QUESTION NO. 8: Is the City of Bozeman "estopped" from claiming mistake?

ANSWER:     Yes _____          No ___X___

QUESTION NO. 9: Has the City of Bozeman "waived" its right to claim mistake?

ANSWER:     Yes _____          No ___X___

QUESTION NO. 10: Should the Contract be reformed to read so that Item No. 1 on Schedule II reads C.Y. instead of C.F.? If your answer to either Question 7, 8 or 9 is "yes" then the Contract may not be reformed.

ANSWER:     Yes ___X___          No _____

QUESTION NO. 11: Did Mark Story acquiesce in the mistake?

ANSWER:     Yes ___X___          No _____

If your answer is "yes" then skip to Question No. 14.

QUESTION NO. 12: Is Mark Story "estopped" from claiming Contract damages?

ANSWER:     Yes _____          No _____

If your answer is "yes" then skip to Question No. 14.

QUESTION NO. 13: Has Mark Story "waived" his claim for Contract damages?

ANSWER:     Yes _____          No _____

If your answer is "yes" then skip to Question No. 14.

QUESTION NO. 14(A): If you find that there was mutual mistake and if you find that the answers to No's 11, 12 and 13 are "No" then answer Question No. 15.

QUESTION NO. 14: If you found that there was a mutual mistake and if you find that the answers to No's

8

11 or 12 or 13 are "Yes" then Mark Story cannot recover damages for Type II Bedding.

However, if the contract was breached by the City in other respects, you may consider damages for Mark Story for other contract breaches.

QUESTION NO. 15: What contract damages, if any, are due Mark Story?

$ 13,236.00

QUESTION NO. 16: Has Mark Story's further performance of the contract been excused by the conduct of the Defendants?

ANSWER: Yes _____ NO __X__

QUESTION NO. 17: How much, if any, should the City of Bozeman recover on its Counter-claim against Mark Story?

$ nothing

The Court will enter the proper judgment based upon the above answers.

DATED this __23__ day of March, 1988.

__Bruce E. Ivey_____
Foreperson

The very first question on the special verdict form was, "Did the City of Bozeman breach the obligation of good faith and fair dealing arising out of the Contract with Mark Story?" This sounds in tort and does not adequately and clearly ask the jury to decide whether or not the contract was breached by a breach of the covenant of good faith and fair dealing. Next the jury was asked whether defendant Neil Mann had breached the covenant and then several questions about whether defendants had defamed Story. Then

9

in Question No. 5, the jury was asked the amount of damages suffered by Story. In answer to Question No. 6, the jury found that there was a mutual mistake as to the amount of pipe bedding material. Therefore, the jury found no breach of contract by the City as to the amount of pipe bedding material. As one of the final questions on the special verdict form, the jury was asked the amount of contract damages to Story, without being asked whether the City had breached the contract. The jury awarded Story $13,236 in contract damages. In response to the next question, the jury answered, inconsistently, that Story's further performance of the contract had not been excused by the conduct of defendants.

Special verdicts are governed by Rule 49(a), M.R.Civ.P., which states as follows:

> **Special verdicts.** The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury.

> As to an issue omitted without such demand the court may make a finding; or if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

The dissent claims that we ignore this rule.

Rule 49(a) first states that the special verdict must contain a finding upon each issue of fact. As demonstrated in the pretrial order, the parties to this case recognized that whether the contract had been breached was an important issue of fact. Yet the special interrogatories drafted at the eleventh hour completely leave this question out.

The dissent is correct in stating that Rule 49(a) also requires that a party wishing to claim error predicated on the omission of an issue must demand the issue's submission to the jury before the jury retires. At least one United States Court of Appeals has held that, under the federal rule from which our Rule 49(a) is taken, a party may preserve its objection by proposing a special verdict form including the issue which is rejected or by objecting to a proposed special interrogatory. See Stewart & Stevenson Services, Inc. v. Pickard (11th Cir. 1984), 749 F.2d 635, 641. The purpose of either method is to direct the court's attention to the omitted issue. We adopt the Eleventh Circuit's holding. In this case, the City proposed a special verdict form which included the issue of breach of contract. The City's proposed special verdict form was rejected. The City also objected

11

to the court's special verdict form on the grounds that the organization of the questions was not logical and would be confusing to the jury.

The special verdict form was internally inconsistent, confusing, and misleading to the jury. We hold that the District Court erred in refusing defendants' motion for a new trial because of inadequacy of the special verdict form.

## GOOD FAITH AND FAIR DEALING

The parties contest the appropriate role of the implied covenant of good faith and fair dealing in a breach of contract action. Their arguments, the jury verdict form, and the damages awarded by the jury exhibit some confusion over that role. The jury awarded Story $13,236 in contract damages for an unspecified breach of the contract and $360,000 in tort damages for the City's breach of the obligation of good faith and fair dealing. This great disparity between contract and tort damages is symptomatic of a common problem in the use of the bad faith tort in contract litigation; the "tort tail" has begun to wag the "contract dog." Because of this and other problems, we believe this is an appropriate time to review the current state of the law and to make mid-course corrections.

The concept of good faith and fair dealing has a venerable history in the law of commercial contracts. It first appears in classical Roman law and by the eighteenth century was a well

12

established principle of English contract law imbuing commercial relationships with the common religious and moral principles of the time. E. Farnsworth, <u>Good Faith Performance and Commercial Reasonableness under the Uniform Commercial Code</u>, 30 U. Chi. L. Rev. 666, 669-70 (1962-63). In early twentieth century America, courts first implied the covenant in commercial contracts which, due to the imprecision of the business environment, required that some term be left to the discretion of one of the parties. The implied covenant prevented one party from taking advantage of that discretion to deprive the other of the benefit of the contract. See e.g. Loudenback Fertilizer Co. v. Tennessee Phosphate Co. (6th Cir. 1903), 121 F. 298, 303 (holding that the manufacturer could not interpret "requirements" to purchase from the contract supplier only when the market price exceeded the contract price). Courts used the covenant as a "gap filler" to interpret agreements to cover situations not anticipated in the writing. See e.g. Kirke La Shelle Co. v. Paul Armstrong Co. (N.Y. 1933), 188 N.E. 163, 168 (holding that under a contract entered prior to the advent of "talkies," rights to a screen play included rights to the motion picture). Use of the covenant became so common that it was codified in the Uniform Commercial Code. See 1 R. Anderson, Uniform Commercial Code, § 1-201:82 (3rd ed. 1981). In all cases, the remedy was the same; breach of the covenant or implied contract term was breach of the contract.

Later, the courts began to imply a duty of good faith and fair dealing in liability insurance contracts when insureds sue their insurers for abusive claims settlement practices. The courts relied on the new tort version of bad faith because the insurance policies gave the insurer absolute discretion in settlement precluding suits for breach of contract. Compare e.g. Rumsford Falls Paper Co. v. Fidelity & Casualty Co. (Me. 1899), 43 A. 503, 506 (no breach of the expressed contract terms); Hilker v. Western Automobile Ins. Co. (Wis. 1931), 235 N.W. 413, 414 (breach of the implied covenant). More recently, some jurisdictions implied the covenant in employment contracts to protect at-will employees from wrongful discharge and, in the absence of an express contract, allowed tort recovery. See Fortune v. National Cash Register Co. (Mass. 1977), 364 N.E.2d 1251, 1256. The tort remedy has also been allowed when the parties had a special relationship. See e.g. Commercial Cotton Co. v. United Cal. Bank (Cal. App. 1984), 209 Cal.Rep. 551, 554.

Montana's interpretation of the covenant of good faith and fair dealing has paralleled that of other jurisdictions, except that its trend in recent cases has been to treat the breach of the covenant as a tort. Montana recognizes that an insurer's statutory duties create a duty of good faith and fair dealing sounding in tort and running to both the insured and third-party claimants. Britton v. Farmers Ins. Group (1986), 221 Mont. 67, 72, 721 P.2d

14

303, 306; Fode v. Farmers Ins. Exchange (1986), 221 Mont. 282, 285, 719 P.2d 414, 416; Klaudt v. Flink (1983), 202 Mont. 247, 252, 658 P.2d 1065, 1067; First Security Bank of Bozeman v. Goddard (1979), 181 Mont. 407, 420, 593 P.2d 1040, 1047. Prior to enactment of the *Wrongful Discharge From Employment Act* in 1987, Montana followed other states in upholding common-law tort actions for bad faith discharge. Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 282, 687 P.2d 1015, 1020; Gates v. Life of Mont. Ins. Co. (1983), 205 Mont. 304, 307, 668 P.2d 213, 215. Montana has also recognized the bad faith tort in special relationships when the stronger party abuses its superior position. Tribby v. Northwestern Bank of Great Falls (1985), 217 Mont. 196, 211-12, 704 P.2d 409, 419 (bank's reckless disregard of depositor's rights); Morse v. Espeland (1985), 215 Mont. 148, 152, 696 P.2d 428, 430-31 (attorney's fee agreement); First Nat'l. Bank in Libby v. Twombly (1984), 213 Mont. 66, 73, 689 P.2d 1226, 1230 (bank's improper recovery on a promissory note).

Montana, however, has also used the bad faith tort in a manner uniformly rejected by all other jurisdictions. Montana has recognized the tort of bad faith in the typical arms-length contracts. See Dunfee v. Baskin-Robbins, Inc. (1986), 221 Mont. 447, 455, 720 P.2d 1148, 1153 (franchise agreement); McGregor v. Mommer (1986), 220 Mont. 98, 108, 714 P.2d 536, 543 (sale of business).

15

In the seminal case of Nicholson v. United Pacific Ins. Co., we adopted this tort remedy in the commercial setting to deal with a particular type of problem. The parties in that case entered a lease agreement which provided that the plaintiff would remodel a Helena, Montana, office to the defendant's satisfaction. During the remodeling the defendant decided to forego the new office. Instead of efficiently breaching the lease agreement and paying the plaintiff contract damages, the defendant attempted to force the plaintiff to breach by repeatedly denying satisfaction with the remodeling. Nicholson, (1985) 219 Mont. 32, 34-35, 710 P.2d 1342, 1344. This Court affirmed tort damages against the defendant noting that each party to a contract has a justifiable expectation that the other will act in a reasonable manner in the performance or efficient breach of a contract. When one party used its discretion to arbitrarily, capriciously or unreasonably deprive the other party of the benefit of the contract, those expectations were violated. Nicholson, 219 Mont. at 41-42, 710 P.2d at 1348.

Montana stands alone in allowing the bad faith tort in any type of contract. Apparently California is the only other jurisdiction to have applied the theory to commercial contracts, Seaman's Direct Buying Service, Inc. v. Standard Oil Co. (Cal. 1984), 686 P.2d 1158, 1167, but it quickly limited the tort action to cases of special relationships, Quigley v. Pet, Inc. (Cal. App.

16

1984), 208 Cal.Rep. 394, 403; Price v. Wells Fargo Bank (Cal. App. 1989), 261 Cal.Rep. 735, 741.

The problems caused by contaminating common contract litigation with tort damages are well recognized. See e.g. S. Ashley, Bad Faith Actions, §§ 11.02 and 11.03 (1984); Comment, Commercial Bad Faith; Tort Recovery for Breach of Implied Covenant in Ordinary Commercial Contracts, 48 Mont. L. Rev. 349, 369-73 (1987) (authored by Glenn E. Tremper). Primarily, the specter of tort damages upsets the concept of efficient breach. Parties have traditionally been free to breach their contract and pay contract damages whenever performance was not economically efficient. The relatively simple calculation of whether it is more profitable to breach a contract and pay damages rather than to perform is now complicated by the possibility of more indefinite tort damages. It is true that efficient breach is rarely efficient; the winning party must pay the cost of recovering contract damages. T. Diamond, The Tort of Bad Faith: When, If At All, Should It Be Extended Beyond Insurance Transactions?, 64 Marq. L. Rev. 425, 439-43 (1981). This problem, however does not support tort damages. In written contracts, the parties can avoid this inequity by providing in the contract for an award of costs and attorney's fees to the prevailing party. See § 28-3-704, MCA.

As with damages, the evidence in cases involving contracts becomes more speculative when tort actions are allowed. Contract

17

litigation cases are now routinely accompanied by bad faith tort claims opening the litigation to evidence far beyond the traditional contract issues. Instead of concentrating on pertinent issues such as offer, acceptance, breach, and mistake, the jury is faced with evidence of moral wrongdoing and punitive damages--evidence that may be misleading and inflammatory in contract litigation.

Since first recognizing the cause of action in 1979, First Security Bank of Bozeman v. Goddard (1979), 181 Mont. 407, 420, 593 P.2d 1040, 1047, this Court has decided more than twenty bad faith cases. As the tort became more prevalent in all contexts, this Court's interpretations have evolved to limit its over-use. In wrongful discharge cases, we held that the covenant arises only when the employer's objective manifestations give the employee a reasonable belief that he or she has job security. Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 283, 687 P.2d 1015, 1020. In Nicholson we stated that the covenant of good faith and fair dealing does not arise in every contract, but instead depends on the justified expectation of the parties created by their particular contractual relationship. Even when the covenant arose, it was breached only by an arbitrary, capricious or unreasonable violation of those expectations. Nicholson, 219 Mont. at 41-42, 710 P.2d at 1348. We have also held that claims based on an insurer's bad faith refusal to settle must await determination of the underlying liability issue to prevent prejudice to the insurer.

18

Fode v. Farmers Ins. Exchange (1986), 221 Mont. 282, 287, 719 P.2d 414, 417. Most recently, we have adopted the position that the covenant cannot be breached unless the contract is also breached. Montana Bank of Circle v. Ralph Meyers & Son, Inc. (Mont. 1989), 769 P.2d 1208, 1214, 46 St.Rep. 324, 331; Nordlund v. School Dist. No. 14 (1987), 227 Mont. 402, 406, 738 P.2d 1299, 1302.

The legislature has also reacted to the prevalence of bad faith torts. In 1987, it restricted wrongful discharge actions, Wrongful Discharge from Employment Act, ch. 641, 1987 Mont. Laws 1764, and punitive damages, Act Approved April 27, 1987, ch. 627, § 2, 1987 Mont. Laws 1722. In actions arising out of contract, the legislature also banned punitive damages, Act Approved April 27, 1987, ch. 627, § 1, 1987 Mont. Laws 1722, and damages for emotional distress, Act Approved April 15, 1987, ch. 488, § 1, 1987 Mont. Laws 1195. While the latter provisions may not apply to the separate tort of bad faith, they do indicate that such damages are not always appropriate in contract actions. Most importantly, in § 28-1-211, MCA, the 1987 Legislature defined the standard of conduct under the implied covenant as honesty in fact and the observance of reasonable commercial standards--the same standard applied to merchants under the Uniform Commercial Code. Act Approved April 20, 1987, ch. 571, § 1, 1987 Mont. Laws 1431. We are persuaded that it is time to reassess the covenant of good

faith and fair dealing and to provide more workable guidelines for the future.

In the typical contract case the Nicholson reasoning is still sound, but the Nicholson tort remedy is excessive. The Uniform Commercial Code provides a more workable model for most contracts not covered by specific statutory provisions. The Code states, "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement." Section 30-1-203, MCA. "'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Section 30-2-103(1)(b), MCA. A party who breaches the covenant may be denied the benefit of a relevant Code provision or the breach may be deemed a breach of the contract. 1 R. Anderson, Uniform Commercial Code, § 1-203:14 (3rd ed. 1981 & 1989 Supp.). This Court believes that the Uniform Commercial Code model should be extended to cover all contracts and that the bad faith tort should be used only when the parties have a special relationship.

We hold that every contract, regardless of type, contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract. Thus, breach of an express contractual term is not a prerequisite to breach of the implied covenant. For every contract not covered by a more specific

20

statutory provision, the standard of compliance is that contained in § 28-1-211, MCA:

> The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

This is the same standard as applied to merchants under the Uniform Commercial Code. Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached.

In the great majority of ordinary contracts, a breach of the covenant is only a breach of the contract and only contract damages are due.

> For breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

Section 27-1-311, MCA. In common contract actions, tort-type damages are not available for breach of the implied covenant of good faith and fair dealing. They are, however, available for

21

traditional contract-related torts such as fraud, fraudulent inducement, and tortious interference with a contract.

The tort of bad faith may still apply in exceptional circumstances. It serves to discourage oppression in contracts which necessarily give one party a superior position. The legislature has codified the tort's most common applications. See Wrongful Discharge from Employment Act, §§ 39-2-901 through -914, MCA; Unfair Trade Practices Act (Insurance) §§ 33-18-101 through -1005, MCA. The tort remedy may also be available in contracts involving special relationships which are not otherwise controlled by specific statutory provisions. To delineate those special relationships we adopt the following essential elements from California case law.

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

Wallis v. Superior Court (Cal. App. 1984), 207 Cal.Rep. 123, 129.

If the facts of the special relationship are undisputed as to whether there is a special relationship, it is a question of law

22

for the court to decide. If substantial evidence is presented supporting each and all of the above essential elements and such evidence is controverted in whole or in part, there arises appropriate questions of material fact to be submitted to the jury. If substantial evidence is not presented in support of each and all of the essential elements, the court shall direct there is no special relationship.

In special relationship contracts, the standard of conduct is the same as that for other contracts--honesty in fact and observance of reasonable commercial standards of fair dealing in the trade. Section 28-1-211, MCA. In contracts involving the special relationships that we have delineated, supra, if the standard of conduct required by the implied covenant of good faith and fair dealing as defined in § 28-1-211, MCA, is violated, the duty of good faith and fair dealing is breached. In addition to recovering damages for breach of contract, the aggrieved party may also recover tort damages.

A special jury verdict form, such as that used in the present case, must present the jury with a consistent and logically ordered progression of issues reflecting the above analysis. When contract breach is alleged, the form must first direct the jury to determine if an express term of the contract was breached or if the implied covenant of good faith and fair dealing was breached. If the jury

answers affirmatively, it may then consider contract damages. If the court, or the jury upon proper questions, as the case may be, has found that a special relationship exists between the contracting parties, and the jury has found the implied covenant was breached, the jury may then consider tort damages.

## FEE AGREEMENT

Story has raised several issues on cross-appeal, none of which we need discuss because of our grant of a new trial. The City has also raised several other issues. The only one which we will address is a question of statutory construction. The issue is whether Story's counsel filed his "notice of fee agreement" in a timely manner under § 2-9-314, MCA. He filed it after entry of judgment.

Section 2-9-314(1), MCA, provides:

> When an attorney represents or acts on behalf of a claimant or any other party on a tort claim against the state or a political subdivision thereof, the attorney shall file with the claim a copy of the contract of employment showing specifically the terms of the fee arrangement between the attorney and the claimant.

The statute says nothing about when the copy of the contract of employment must be filed. It merely tells where to file it. We hold that there is nothing in the statute to preclude the District Court's decision that the fee agreement was timely filed.

Reversed and remanded.

_/s/ J. A. Turnage_
Chief Justice

We concur:

_/s/ John Conway Harrison_

_/s/ Diane G. Barz_

_/s/ R. C. McDonough_

_/s/ Fred J. Weber_

Justices

25

Justice John C. Sheehy, dissenting:

## I.

The majority opinion is an example of scurrying through the record to find a bone to pick on which to base a reversal. The excuse for reversal is flimsy, and that is putting the best possible face on it.

The theme of the reversal is that the special verdict form did not first require the jury to find a breach of contract as a condition precedent to finding a breach of the covenant of good faith and fair dealing. That theme ignores the specific instructions of the District Court to the jury, the submission by defendants of the same form of special verdict, and the provisions of Rule 49(a), M.R.Civ.P., which provisions the reversal ignores where they particularly apply.

When a district court submits a special verdict on an issue of fact to be decided by the jury, the District Court must give an instruction telling the jury how to employ the special verdict. State Bank of Townsend v. Maryann's, Inc. (1983), 204 Mont. 21, 32, 664 P.2d 295, 301. The District Court precisely followed that rule in this case.

The first question submitted to the jury was:

QUESTION No. 1: Did the City of Bozeman breach the obligation of good faith and fair dealing arising out of the Contract with Mark Story?

ANSWER: YES __X__ NO _____

In instructing the jury on this subject, the court utilized instructions that were proposed by the defendants. The District Court accepted and gave defendant's proposed instructions no. 18 and 19, which respectively became court's instructions no. 33 and 34. Those instructions were as follows:

INSTRUCTION NO. 33

26

There is a covenant of good faith and fair dealing implied into the contract between the City of Bozeman and the plaintiff which is measured by the justifiable expectations of the parties. The covenant of good faith and fair dealing is violated if the justifiable expectations of one party is exceeded by arbitrary, capricious, or unreasonable conduct by the other party.

INSTRUCTION NO. 34

<u>You must first find that the party breached the contract before you can consider whether the covenant of good faith and fair dealing should be implied and if you find that the covenant should be implied, you may then consider whether the party breached the implied covenant.</u> (Emphasis added.)

In addition to the foregoing instructions directing the jury first to find a breach of the contract before it could find a breach of the obligation of good faith and fair dealing, the court carefully instructed the jury as to what a "breach" of contract was:

INSTRUCTION NO. 21

You are instructed that you must determine the nature and terms of the promises in the contract between the parties and further determine whether or not the promises contained in the contract have been fully performed by them.

The failure, without legal excuse, to perform any promise which forms the whole or part of a contract is called a "breach" of contract.

Thus we have a situation where the defendant's view of Montana law applying to implied covenants of good faith and fair dealing was accepted by the court and given to the jury in the

27

instructions. The court instructed the jury that it must first find that the defendant's breached the contract before the jury could consider whether the covenant of good faith and fair dealing was implied, and whether it was breached. The jury was further told what constituted a breach of contract.

This case marks the first time, as far as I am able to discover, that a district court has been held in error by this Court for properly instructing a jury as to how the jury should employ and answer a special interrogatory. In instruction no. 1, the District Court told the jury in this case ". . . you are to consider all the instructions as a whole, and to regard each in the light of all the others. The order in which the instructions are given has no significance as to their relative importance."

In so instructing the jury as to how to answer question no. 1, the District Court faithfully followed the requirement of Rule 49(a), M.R.Civ.P., in part as follows:

> . . . The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue . . .

The second reason for this dissent is that the format followed by the District Court in submitting question no. 1 is precisely the format that was suggested by defendants in their submitted special verdict form. Attached to this dissent as an exhibit is a copy of the special verdict form submitted by the defendants. It will be seen in that form that the first two questions proposed by the defendants related to pipe bedding material involved in the

28

contract between the City of Bozeman and Mark Story. Question no. 3, however, is in almost the same language of question no. 1 which the court used. Thus, whether the District Court utilized the form submitted by the defendants or the form submitted by the plaintiff, in each event, the jury would have been led immediately to the question of the breach of covenant of good faith and fair dealing. The majority on this Court hold the District Court in error for following exactly the format for interrogatories submitted by the defendants.

The majority opinion is mistaken in stating that the redrafting of the special verdict form took place after a long day of trial, lasting from 7:30 a.m. until after 10:00 p.m. That is not true. The majority have not read the record accurately. What did happen was that the jury, at the close of all the evidence, was excused in the afternoon of Tuesday, March 22, 1988. The court met with counsel in chambers after the jury was excused from 3:00 p.m. until 7:00 p.m. of March 22, 1988, at which time they considered the instructions and the special verdict form which had been offered. At that time, the only special verdict form offered for the court's consideration was that supplied by the plaintiff. The District Court judge examined the special verdict on March 22, and suggested modifications. The court and counsel adjourned at 7:00 p.m. that evening. The next morning the court and counsel met again in chambers at 7:30 a.m., and made a record as to the rulings of the District Court on the instructions, and on the special verdict. It was only at this time that the defendants presented

29

any form of special verdict.  Sometime after the settlement of instructions (the record does not disclose the hour), the District Court read the instructions to the jury and counsel argued.  The jury retired to find a verdict and in the evening in the course of their deliberations sent out three questions for answer by the court.  The District Court, by telephone conference, discussed with counsel the three questions, none of which related to the implied covenant of good faith and fair dealing, and revised the special verdict form accordingly.  This revision did occur at 10:05 p.m. in the evening of March 23, 1988, but it did not pertain to Question No. 1.  Thereafter, the jury returned its verdict in the form of special interrogatories.

In ruling on the motion for a new trial, the District Court gave a further reason for denying the objections of the defendants to the jury verdict form, saying:

> (2)  Special verdict forms submitted to the jury were confusing, unnecessarily complex, caused the jury to consider liability theories in an incorrect order, and unduly emphasized plaintiff's theories of recovery.  On that objection, the Court points out that the Court requested interrogatories to be submitted by counsel and after thorough deliberation the instructions were settled on the 22nd day of March, 1988, from approximately 3:00 p.m. until 7:00 p.m.  The Court convened again at 7:30 a.m. on the 23rd day of March, 1988, for the purposes of settling instructions and it was not until that time that the Defendants brought in a proposed form of special verdict.  The Court examined the special verdict form submitted by the Plaintiff the day before and requested certain modifications.  After considering both forms of the special verdict, the Court elected to use that form prepared by the Plaintiffs and rejected that prepared by Defendants because of the untimeliness of the filing of the same.  Additionally, the Court found the Plaintiff's form more logical.  The Court denies the Motion for a New

30

Trial based upon the alleged deficiencies of the special verdict form.

It is an unjustifiable imposition upon the District Court to hold it in error in the circumstances thus described. It is more unjustifiable when the defendants' proposed special verdict form only followed the format of the form already proposed by the plaintiff.

It should be but is not important to this Court and to the decision that the defendants in this case never <u>specifically</u> told the District Court their objections to the special verdict form on the ground that the question of breach of contract should have been submitted first. When the District Court, in formulating the special verdict, at the session on the morning of March 23, 1988, finally settled on the form to be used, the defendant made only this objection:

> MR. HERNDON: Let the record show that the Court, and essentially plaintiff's counsel, have redrafted plaintiff's version of the special verdict to which the defendants objected as being confusing, with a clear bias toward the plaintiff and a clear prejudice toward the defendants, and it misleads the jury as to the proper application of the instructions.

The foregoing is nothing more than a general objection, worthless because it does not state with particularity where the court is in error. This Court ought to apply the same test to objections to a special interrogatory that is applied to instructions, as set out in Rule 51, M.R.Civ.P.:

> . . . Objections made shall specify and state the particular grounds on which the instruction is objected to and it shall not be sufficient in stating the ground

31

of such objection to state generally that the instruction does not state the law or is against the law, but such ground of objection shall specify particularly wherein the instruction is insufficient or does not state the law, or what particular clause therein is objected to
. . .

See Ahmann v. American Fed. Sav. & Loan Ass'n. (1988), 235 Mont. 184, 195, 766 P.2d 853, 860.

Rule 49(a), M.R.Civ.P., properly construed, requires that a specific objection be made to the Court. It provides in part:

. . . The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted <u>unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict</u>.

The first time that the defendants notified the District Court that they objected to the special verdict form because it did not first require a finding of breach of contract was in their Motion for New Trial filed April 1, 1988.

A proper rule regarding objections to special verdicts is set out in H. J. Baker and Bro. v. Orgonics, Inc. (R.I. 1989), 554 A.2d 196, 201, which held that a party objecting to a special verdict must have submitted an interrogatory for the jury to the Court, <u>and must object to the Court's failure to include the requested interrogatory before the Court submits its own version to the jury</u>.

Under the instructions given by the Court as to question no. 1, absolutely no prejudice occurred to defendants, because in order

32

to answer "yes" to question no. 1, the jury, under the instructions, had first to find a breach of contract. The reason given by the majority for reversal, on this record is, again, flimsy.

In another context, the majority opinion states that the award of $13,236 in contract damages to Story is inconsistent with the jury's finding in answer to question no. 16 that Mark Story's further performance under the contract had not been excused by the conduct of the defendants. The finding of contract damages for breach, however, is completely in accord with instruction no. 22 given to the jury, which stated:

Instruction No. 22

> A party to a contract is excused from further performance by the breach of failure or performance of the other party only when that breach is so great as to defeat the objects of the contract. <u>A breach which is incidental and subordinate to the main purpose of the contract and may be compensated in damages does not justify termination</u> and the injured party is still bound to perform his part of the agreement. (Emphasis added.)

Thus, in awarding, damages to the plaintiff for breach of contract, without excusing his further performance, the jury acted consistently with the instructions and in accordance with law.

## II.

When we read the second portion of the majority opinion, a light dawns as to the reason for the reversal on this thin record. The majority have a higher agenda, one beyond the appeal in this case: the implied reversal of Nicholson v. United Pacific Ins.

Co. (1985), 219 Mont. 32, 710 P.2d 1342. They use the vehicle of this case, weak as it is, to work their purpose.

There is no issue raised in this case from the parties or the record as to the concept of the implied covenant of good faith and fair dealing in contracts. The law applying to this subject used by the District Court <u>was that supplied by the defendants</u>. That application by the District Court has become the law of the case. Without briefs on the issues, and without notice to the Bar in general, the majority opinion accomplishes the following results:

1. The implied covenant of good faith and fair dealing attends every contract.

2. The tort of breach of the implied covenant arises only in "special relationships."

3. Where no special relationship exists, the only available damages are contract damages, regardless of how egregious the conduct of the wrongdoing party is and regardless of the <u>tort</u> involved.

It is inconsistent of course to hold that the implied covenant of good faith and fair dealing attends every contract, and then to limit damages for a breach of the implied covenant to contract damages, unless a "special relationship" exists between the contracting parties. The implied contract does not depend for its existence upon express terms in the underlying contract. The implied covenant comes into being upon considerations of justice and fairness imposed by law, and the implied covenant exists whether or not the parties assented to it. Thus its breach is not a breach of contract, but is a tort, and has always been so defined. McGregor v. Mommer (1986), 220 Mont. 98, 108, 714 P.2d

34

536, 543, ("a breach of this implied covenant which results in damages can thus give rise to an action in tort"); Dunfee v. Baskin-Robbins, Inc. (1986), 221 Mont. 447, 455, 720 P.2d 1148, 1153, ("In a commercial setting, we now have held that where the conduct of one party unreasonably breaches the justifiable expectations of the other party, an action in tort results"). Applying contract damages to the tort of breach of the implied covenant is a perversion of the historical difference the law has always perceived in damages arising from breach of contract and those arising from tort.

Five justices presently on this Court unanimously agreed to Nicholson v. United Pac. Ins. Co., supra. In that case, this Court stated:

> While we decline to extend the breach of implied covenant to all contract breaches as a matter of law, as California has done, we agree with the statement in Quigley, supra, that the tort resulting from this breach depends on some impermissible activity. The Montana cases discussed above focus on the action of the breaching party in the relationship to find a breach of the implied covenant, not just the existence of a breach of contract.

> At this point a helpful distinction should be noted between an intentional breach or one motivated by self-interest, giving rise to only contract damages, and the action which would give rise to a breach of the implied covenant, resulting in tort damages. Historically, a party to a contract generally had the right to breach or pay damages rather than perform. The non-breaching party, theoretically, is "made whole" from the damages paid following the breach and thus still receives the benefits from the agreement.

>> "Contract law is based in part on the assumption that certain intentional breaches are to be encouraged. Permitting parties to breach their contracts promotes an efficient

35

economy, at least when the gains for the breach exceed the expected pecuniary injuries of the promisee."

Diamond, The Tort of Bad Faith Breach of Contract: When, If At All, Should It Be Extended Beyond Insurance Transactions, 64 Marquette Law Review, 425, 453 (1981). But whether performing or breaching, each party has a justifiable expectation that the other will act as a reasonable person. Neal v. Farmers Insurance Exchange (Cal. 1978), 21 Cal.3d 910, 148 Cal.Rep. 389, 582 P.2d 980. The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party. The second party should then be compensated for damages resulting from the other's culpable conduct.

219 Mont. at 41-42, 710 P.2d at 1348.

What a far cry from the enlightened opinion in Nicholson is the decision today of the majority of this Court.

Nicholson provides us with a good example of the effect of the majority opinion in this case. Nicholson was a building owner in downtown Helena who had entered into a lease agreement with United Pacific Insurance (UPI) for office space. The lease agreement contained provisions that Nicholson confer with UPI about the renovation of the office building space, and that the final plans for renovation were subject to mutual approval.

As the work progressed, Nicholson found it increasingly difficult to get approval from UPI of his renovation project. He continuously sent plans, conferred with their architects, and finally lost communication altogether with the company officers. Nicholson sent a final revised plan of renovation to UPI and three days later received a letter from UPI rescinding the lease

36

agreement. Nicholson filed a complaint after notice of default against UPI, and during discovery, learned that a "secret" UPI task force had made recommendations about reorganizing the company, the effect of which would be to transfer the Helena office to Salt Lake City, Utah. Nicholson argued that when UPI realized this, it became intransigent and threw obstacles hoping to cause him to breach the lease agreement. Based on these facts, Nicholson contended that UPI had rescinded the lease without justification. Nicholson spent sums in excess of $98,000 in remodeling. Upon Nicholson's suit, the jury returned a verdict in his favor for compensatory damages of $211,105 and exemplary damages of $225,000.

If the opinion in this case had been in effect when Nicholson came before this Court, then Nicholson should have lost completely on breach of the covenant. Under the majority opinion, if applicable, no "special relationship" existed between Nicholson and UPI, and his damages would be, if any, limited to what the majority describe as an "efficient breach." Needless to say, the only party for whom such a breach would be "efficient" was UPI.

The sentence in the majority Opinion (slip opinion, p. 20) that "breach of an express contractual term is not a prerequisite to breach of the implied covenant" is an interesting reversal, without saying so, of Montana Bank of Circle v. Meyers & Son (Mont. 1989), 769 P.2d 1208, 1214, and Nordlund v. School District No. 14 (1987), 227 Mont. 402, 406, 738 P.2d 1299, 1302. No longer does this Court require a breach of the underlying express contract terms before the obligation of good faith may be considered by the

37

jury. Thus the majority abandon the reason for which in the first place they reverse this case. In the forepart of the their Opinion, the majority see evil in the special verdict form because the jury was not first required to find an underlying breach of the express terms of the contract. Now, such a finding is needless. It demonstrates again the flimsiness of the grounds for reversal in this case.

What the majority have done in this case is to abrogate any remedy for arbitrary, capricious or egregious conduct by a contracting party, upon issues not raised in this file nor on the record and without notice to the Bar in general. The reversal of the hard-won verdict obtained by Mark Story in this case is a joke. Under the limitations of the majority opinion, he will never again be justly compensated by any jury.

Please register my strong dissent to the uncalled-for result in this case.

John C. Sheehy
                                    Justice

I concur in the foregoing dissent of Justice Sheehy.

William E. Hunt Sr.
                                    Justice

(Special verdict form submitted by defendants on the morning the case was submitted to the jury.)

## SPECIAL VERDICT

We, the jury, duly impaneled to try the above entitled cause, answer the questions submitted to us in this Special Verdict as follows:

QUESTION NO. 1:

Did the contract between Mark Story and the City of Bozeman fail to state the true intention of the parties with respect to the units of Type 2 Pipe Bedding material, in place in Item 1 of Schedule II of the Group Watermain Project by reason of fraud, mistake of one party while the other at the time knew or suspected that the written contract did not truly express the intention of the parties?

ANSWER: _____
(write "yes" or "no"

If you answer "yes" go to Question No. 2.

If you answer "no" go to Question No. 3.

QUESTION NO. 2:

Did the City of Bozeman and Mark Story intend that the unit quantity of Type 2 Pipe Bedding in place to be "C.F." meaning cubic feet or "C.Y." meaning cubic yards in item 1 of Schedule II of the Group IV Watermain Project in the contract between the parties?

ANSWER: "C.F." was intended _____
(write "yes" or "no"

1

"C.Y." was intended _____

(write "yes" or "no"

QUESTION NO. 3:

Did the City of Bozeman breach the implied covenant of good faith and fair dealing in its contract with Mark Story?

ANSWER: _____

(write "yes" or "no"

QUESTION NO. 4:

Does the May 13, 1986, letter from Neil Mann to Balboa Insurnce Company (Exhibit 130 A) contain false and defamatory statements concerning Mark Story?

ANSWER: _____

(write "yes" or "no"

If the answer is "no" skip Question No. 5 and go to Question No. 6.

QUESTION NO. 5:

Is the May 13, 1986, letter from Neil Mann to Balboa Insurance Company (Exhibit 130 A) privileged?

ANSWER: _____

(write "yes" or "no"

QUESTION NO. 6:

Did the City of Bozeman breach its contract with Mark Story?

ANSWER: _____

(write "yes" or "no"

QUESTION NO. 7:

2

Is Mark Story entitled to any additional compensation for the work done or the materials furnished under the terms of the contract with the City of Bozeman?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 8:

Did Mark Story breach his contract with the City of Bozeman?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 9:

Is the City of Bozeman entitled to recover liquidated damages from Mark Story under their contract dated November 12, 1985?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 10:

Is the City of Bozeman entitled to recover damages for the cost of repairs to the Valley View Golf Course necessitated by Mark Story trespassing outside of the working easement provided by his contract with the City of Bozeman?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 11:

Did Mark Story acquiesce in the error in the contract concerning whethr the unit quanity of Type 2 Pipe Bedding in place was "C.F.", meaning cubic feet or "C.Y." meaning cubic yard?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 12:

3

Did the City of Bozeman acquiesce in the error in the contract concerning whether the unit quantity of Type 2 Pipe Bedding in place was "C.F." meaning cubic feet or "C.Y." meaning cubic yards?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 13:

Is Mark Story "estopped" from claiming contract damages?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 14:

Is the City of Bozeman "estopped" from claiming contract damages?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 15:

Has Mark Story "waived" his claim for contract damages?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 16:

Has the City of Bozeman "waived" its claim for contract damages?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 17:

Has Mark Story failed to mitigate his damages, if any?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 18:

4

Has the City of Bozeman failed to mitigate its damages, if any?

ANSWER: _____
(write "yes" or "no"

QUESTION NO. 19:

State the total damages recoverable by Mark Story, d/b/a/ Mark Story Construction from the City of Bozeman.

ANSWER: $_____

QUESTION NO. 20:

State the total damages recoverable by the City of Bozeman from Mark Story, d/b/a Mark Story Construction.

ANSWER: $_____

DATED this ____ day of March, 1988.

_____
FOREPERSON OF THE JURY

5