No. 90-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

MANN FARMS INCORPORATED, a Montana Corporation,
JOHN J. MANN, FRANCIS MANN, WILBUR MANN and
EDNA MANN,

                    Plaintiff and Appellants,

    -v-

TRADERS STATE BANK OF POPLAR, MONTANA, and
NORTHEAST MONTANA BANK SHARES, INC.,

                    Defendants and Respondents.

FILED

NOV - 8 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Roosevelt,
               The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            James G. Edmiston, III, Billings, Montana
            Richard A. Ramler & Belinda D. Rinker, Belgrade,
            Montana

        For Respondent:

            Bruce A. Fredrickson & Charles R. Cashmore; Crowley,
            Haughey, Hanson, Toole & Dietrich; Billings, Montana

---

                    Submitted on Briefs:  June 28, 1990

                              Decided:  November 8, 1990

Filed:

---

                    Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

In what has come to be called a bad faith action, the District Court of the Fifteenth Judicial District, Roosevelt County, granted summary judgment to defendants. Plaintiffs appeal. We affirm.

The sole issue for our consideration is whether the District Court erred in granting summary judgment in favor of defendants?

The Mann family formed Mann Farms, Inc. (Mann Farms) in 1976. In the beginning, Traders State Bank (the Bank) carried the Mann Farms' credit in an unsecured status. Over the years, Mann Farms' debt with the Bank continued to increase. As a result of that increase, in 1983 the Bank took its first security on the Mann Farms' line of credit.

Mann Farms had difficulty reducing the principal balance. In an effort to work out some kind of an agreement, John Mann met several times with Richard Loegering (Loegering), the Bank's Executive Vice President. John Mann informed him that he was going to apply for a Small Business Administration (SBA) disaster loan. He also desired to rework his loan with the Bank. The Bank planned to take a second mortgage and requested Mann Farms to provide it with projections for Mann Farms' 1985 credit needs. Mann Farms failed to comply.

Finally on May 1, 1985, Mann Farms executed a renewal note, second mortgages, and new security agreements. Loegering informed the Manns that he would present a request for $50,000 to the loan committee for approval based on Mann Farms' projected operating loss for 1985 of $51,000.

The loan committee approved two loans for $25,000 each; the first on the condition that Mann Farms provide the Bank with additional collateral in the form of the corporations titled vehicles, and the second on the condition that Mann Farms receive the SBA disaster loan. Mann went to the bank and signed the first note for $25,000 on May 10, 1985. However, no funds were advanced because the additional collateral had not been provided. No note was ever signed representing the second $25,000.

Subsequently, Mann Farms bargained with Moe Motors, a farm implement dealer, to purchase a Caterpillar laser scraper, a Wagner four wheel drive tractor and a White two wheel drive tractor. He listed the Bank as a credit reference in his application for financing.

Mann Farms had not disclosed those purchase agreements to the Bank. The purchase agreements with Moe Motors showed that Mann Farms was trading in a 1973 Steiger tractor with a trade-in value of $24,400. Mann Farms did not own a 1973 Steiger tractor. There were also other discrepancies on the purchase agreements. Loegering received a phone call for a credit reference. Loegering informed the caller that Mann Farms was "heavily indebted" and had been "past due since December of '84" with its payments to the Bank.

Because he knew that Moe Motors used Citizens First as its bank on purchase contracts, Loegering telephoned Richard Uithoven (Uithoven), President of Citizens First National Bank of Wolf Point (Citizens First). Uithoven informed Loegering that Mann Farms

listed the Caterpillar Scraper as collateral for a loan, owed $28,000 to a third party on the Scraper, and that Mann Farms attempted to obtain financing from Citizens First to pay off the balance owed on the third party loan. Loegering informed Uithoven of the Bank's experience with Mann Farms, including loan balances, current financial condition, and past delinquencies. Uithoven testified that his conversations with Loegering did not affect his bank's decision regarding the Mann Farms' credit application at that bank. The Bank decided it would not loan Mann Farms the first $25,000 unless the equipment purportedly purchased from Moe Motors was returned.

Mann Farms was unable to return the White tractor to Moe Motors because Moe Motors had already sold the contract. However the other purchases were returned and the purchase contracts rescinded. The Bank then decided that it would proceed with the first $25,000 conditional loan at Mann Farms' request. Mann Farms never requested that the funds be advanced and the note eventually expired.

In the fall of 1985, the SBA approved a conditional disaster loan to Mann Farms. The Bank decided that it would agree to the SBA proposal conditioned upon the Bank's receipt and approval of a reasonable cash flow/budget from Mann Farms projecting its 1986 expense needs. Loegering and John Witte, the Bank president, met with the Manns to attempt to work out the cash flows. No agreement was reached. Mann Farms filed Chapter 12 Bankruptcy. The final decision on that matter is pending.

4

On March 28, 1988, Mann Farms filed its complaint against Trader State Bank and Northeast Montana Bank Shares (the Holding Company) alleging breach of the implied covenant of good faith and fair dealing; breach of fiduciary obligations; negligent misrepresentation; interference with contract; and breach of implied contract of customer privacy. On December 1, 1989, defendants filed a motion for summary judgment pursuant to Rule 56, M.R.Civ.P. The District Court granted the motion against all claims and dismissed the complaint with prejudice. From that decision Mann Farms appeal.

Did the District Court err in granting summary judgment in favor of defendants?

The District Court condensed the material components giving rise to each of Mann Farms' separate allegations into the following:

1. The Bank's exercise of its business judgment in temporarily withdrawing a $25,000 line of conditional operating credit from Mann Farms during the spring of 1985, after becoming aware of undisclosed equipment purchases by Mann Farms from Moe Motors Co., which, in the Bank's judgment, impaired Mann Farms' ability to service its debt at the Bank.

2. The Bank's discussions with Citizens First National Bank of Wolf Point, a potential purchaser of the Moe Motors equipment contracts, regarding Mann Farms' financial situation.

3. The Bank's refusal to loan operating funds to Mann Farms during the Spring of 1986.

4. The SBA's refusal to loan disaster relief funds unless certain conditions were met.

5. Plaintiffs also contend that the actions of

John Witte give rise to potential liability against the Holding Company.

The District Court concluded that the totality of the record established that there were no genuine issues of material fact and that both defendants are entitled to judgment as a matter of law on all counts of plaintiffs' amended complaint. See Tucker v. Trotter Treadmills, Inc. (Mont. 1989), 779 P.2d 524, 46 St.Rep. 1646. Following is a review of Mann Farms' claims.

## Implied Covenant of Good Faith and Fair Dealing

Mann Farms maintains that the Bank acted dishonestly and outside of any acceptable commercial practices in the banking industry. It maintains that the Bank breached its agreement to loan Mann Farms operating expenses of $50,000 after Mann Farms had agreed to renew the existing security agreements.

The Bank maintains that if the covenant of good faith and fair dealing existed in the instant case, and if there was a breach, that breach occurred on the part of Mann Farms and not the Bank. The Bank urges that all it did was make a good business decision after learning of the purported equipment purchase from Moe Motors. It maintains that the conditional agreement to loan was based in large part upon Mann Farms' representations to the Bank on its March 15, 1985, financial statement and that Mann Farms never informed the Bank of its plans to undertake any additional obligations. We agree.

The financial statement required that Mann Farms provide a "true, complete, and accurate statement" of their financial condition and that "if any changes occur that materially reduce

6

the means or ability of the undersigned to pay all claims and demands against us, the undersigned will immediately notify the Bank in writing." The Moe Motors' contracts resulted in an undisclosed debt of $74,000.

Relying largely on Montana Bank of Circle v. Ralph Meyers & Sons, Inc. (1989), 236 Mont. 236, 769 P.2d 1208, the District Court concluded that since Mann Farms committed the initial breach, it cannot complain of an alleged subsequent breach by the Bank. We affirm the conclusion of the District Court based upon the more recent and controlling decision of Story v. City of Bozeman (Mont. 1990), 791 P.2d 767, 47 St.Rep. 850.

Every contract contains an implied covenant of good faith and fair dealing. A breach of the covenant is a breach of the contract. Story, 791 P.2d 767, 775. In Story, we set forth the standard of conduct required by the implied covenant:

> For every contract not covered by a more specific statutory provision, the standard of compliance is that contained in § 28-1-211, MCA:
>> The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

Story, 791 P.2d at 775. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached. Story, 791 P.2d at 775.

Tort damages are only available in contracts involving a special relationship. In special relationship contracts, the

7

standard of conduct is the same as for other contracts, that is, the "honesty in fact" standard set forth in § 28-1-211, MCA, and quoted above. <u>Story</u>, 791 P.2d at 776. Thus, for a plaintiff to maintain a cause of action for breach of the implied covenant, whether it is based in contract or based on the special relationship criteria giving rise to a tort, the plaintiff must first show a breach of this "honesty in fact" standard. Section 28-1-211, MCA; Kinniburgh v. Garrity (Mont. 1990), ___ P.2d ___, 47 St.Rep. 1655.

Here, the record contains no evidence that the bank did not act in compliance with the honesty in fact standard. There is no evidence that the bank acted dishonestly in revoking the conditional agreement for Mann Farm's failure to disclose its debt to Moe Motors. The bank's revocation of its conditional offer to loan money did not offend reasonable commercial standards of fair dealing in the context of creditor/debtor relationships when it was <u>honestly</u> based on Mann Farm's failure to provide a "true, complete and accurate statement" of its financial condition or immediately notify the bank of material changes in its ability to repay. The District Court correctly held that the Bank did not breach the covenant of good faith and fair dealing.

### Fiduciary Duty

Mann Farms maintains that a fiduciary relationship existed based upon its fourteen year relationship with the Bank.

The Bank maintains, and the District Court agreed that the relationship between a bank and its customer usually does not give

8

rise to fiduciary duty. See Simmons v. Jenkins (1988), 230 Mont. 429, 750 P.2d 1067. Rather, a fiduciary relationship exists when:

> special circumstances indicate exclusive and repeated dealings with the Bank. This Court has recently [required] a bank to act as a financial advisor in some capacity, other than that common in the usual arms-length debtor/creditor relationship, in addition to requiring a long history of dealings with the bank, to establish a fiduciary relationship. (citations omitted).

See First Bank (N.A.)-Billings v. Clark (1989), 236 Mont. 195, 771 P.2d 84. A review of the record confirms the District Court's conclusion that the Bank and Mann Farms never acted beyond the usual arms-length debtor-creditor relationship. We agree with the District Court and conclude that such a relationship does not establish a fiduciary relationship.

## Interference with Contract, Negligent Misrepresentation, and Implied Contractual Right of Customer Privacy

Mann Farms alleged that "the Bank failed to use reasonable care in evaluating the benefits which would have resulted to Plaintiffs". It further maintains that Loegering had no authorization from Mann Farms to contact Uithoven at Citizens First to discuss confidential financial matters.

The Bank justifies Loegering's phone call to Citizens First as an important business decision to protect its interests after becoming aware of the material undisclosed facts relating to Mann Farms' purchase agreements with Moe Motors. Furthermore, it points out that in his deposition, Uithoven testified that his discussion with Loegering did not interfere with First Citizen's decisions regarding the Mann Farms' credit with that institution.

9

We first point out that there is no legal duty requiring a bank to loan money to a customer absent a clear contractual commitment. Furthermore, there is no duty for a bank to renegotiate a defaulted loan. Montana Bank of Circle, 769 P.2d at 1213. Testimony showed it was Bank policy to always conduct credit checks of potential borrowers, and to always inform them of that fact. Such a credit check serves a legitimate business purpose. We conclude it was appropriate for the Bank to make credit checks as was done here.

We conclude that Mann Farms has failed to set forth any evidence that any material issues of fact existed which made summary judgment improper. We hold that the District Court did not err in granting summary judgment in favor of defendants.

Affirmed.

We Concur:

_____
Chief Justice

_____
Justice

_____

_____

_____

_____
Justices